## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| MOHAMMAD ARAMNAHAD, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> MARCO RUBIO, <br> Secretary of State, *et al.*,[1] <br><br> *Defendants*. | No. 24-cv-1817-MAU |

### <u>MEMORANDUM OPINION</u>

Plaintiffs Mohammad Aramnahad ("Aramnahad"), an Iranian national, and his wife Meili Li ("Li"), a Chinese national (collectively "Plaintiffs"), seek declaratory and injunctive relief to compel the United States Government ("Government") to adjudicate their immigrant visa application. ECF No. 1.[2] Plaintiffs contend their application has been unlawfully withheld and unreasonably delayed in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 555(b), 701 *et seq.*, and the Mandamus Act, 28 U.S.C. § 1361. The Government moves to dismiss Plaintiffs' Complaint under Federal Rules of Civil Procedure 12(b)(1) and (b)(6). ECF No. 6. For the reasons set forth below, the Government's Motion to Dismiss ("Motion") is **DENIED**.

---

[1]  Pursuant to Federal Rule of Civil Procedure 25(d), the current Defendant has been substituted for his predecessor. *See* Fed. R. Civ. P. 25(d). Although Plaintiffs have named the Secretary of State and the Director of Screening, Analysis, and Coordination as Defendants, the United States is the real party in interest.

[2]  Aramnahad alleges that he is the beneficiary of a Form I-140 Immigrant Petition. ECF No. 1 ¶¶ 55–56. A spouse or child of a beneficiary is "entitled to the same status, and the same order of consideration provided in the respective subsection, if accompanying or following to join" a beneficiary. 8 U.S.C. § 1153(d). The Government refers to these spouses and children as derivatives. *See* 9 Foreign Affairs Manual § 502.1-1(C)(2)(a). Li is, thus, an alleged derivative of her husband's application. ECF No. 1 ¶¶ 3, 56.

## BACKGROUND

### I.    Legal Framework for the EB-3 Visa Process

The Immigration and Nationality Act ("INA") authorizes the State Department, subject to various restrictions, to issue immigration visas to individuals based on different classifications, including based on employment. 8 U.S.C. § 1153(b). Among the five available employment-based visa categories, the third ("EB-3") is reserved for "[s]killed workers, professionals, and other workers." *Id.* § 1153(b)(3). To apply for an EB-3 visa, applicants generally must obtain a labor certificate from the Department of Labor unless they meet certain exceptions not relevant here. *See id.* § 1182(a)(5)(A)(i). The United States Citizenship and Immigration Services ("USCIS") then initially handles the EB-3 visa process, including investigating and approving applicants' Form I-140 Immigration Petitions and placing approved petitions in a queue by which applicants may formally submit their applications. *See generally id.* § 1154(a)(1)(F), (b); 8 C.F.R. § 204.5. USCIS forwards approved petitions of applicants based outside the United States to the National Visa Center ("NVC"). 8 C.F.R. § 204.5(n). The NVC schedules the applicants for an interview at a United States embassy or consulate in the country in which the applicant resides. *See* 22 C.F.R. §§ 42.61–42.62.

At that interview, an applicant formally makes and executes their visa application before a consular officer. *See* 8 U.S.C. §§ 1201(a)(1)(A), 1202(a)–(b); 22 C.F.R. § 42.62. It is the applicant's burden to demonstrate eligibility for a visa. 8 U.S.C. § 1361; 22 C.F.R. § 42.41. The consular officer must then review and adjudicate the visa application by issuing a visa, refusing the application, or deciding to "discontinue granting" the visa. 22 C.F.R. § 42.81(a); s*ee* 8 U.S.C. §§ 1201(g), 1202(b); 22 C.F.R. § 42.71(a). In so doing, the officer "shall determine on the basis of the applicant's representations and the visa application and other relevant documentation," the applicant's "proper immigrant classification, if any," and their "eligibility to receive a visa." 22

C.F.R. § 42.62(b)(1).  A consular officer may request that an applicant submit additional information when the officer believes current information "is inadequate to determine" visa eligibility.  *Id.* § 42.63(c).

Relevant here, a consular officer may refuse an application under 8 U.S.C. § 1201(g) of the INA when: (1) the officer finds, based on the submissions, that the applicant is ineligible for a visa pursuant to any legal provision; (2) "the application fails to comply with" the INA and its regulations; or (3) the officer "knows or has reason to believe that" the applicant is ineligible for a visa pursuant to any legal provision.  8 U.S.C. § 1201(g).  An applicant may try to overcome this refusal with additional evidence.  *See id.* § 1361 (permitting refused applicant to establish to the "satisfaction of the Attorney General that he is not inadmissible"); 22 C.F.R. § 42.81(e) (requiring case to be reconsidered if applicant "adduces further evidence tending to overcome the ground of ineligibility on which the refusal was based"); 9 Foreign Affairs Manual ("FAM") § 306.2-2(A)(a)(1) (requiring consular officer to "re-open and re-adjudicate the case" when applicant has "presented additional evidence to attempt to overcome a prior refusal"); *see also* 22 C.F.R. § 5.5 (stating the State Department "articulates" its "official guidance, including procedures and policies, on matters relating to Department management and personnel" in the FAM).

When an officer determines they do not possess enough information at the interview to determine an applicant's visa eligibility or they require an advisory opinion ("AO") from the State Department, the officer may purport to "refuse" an application under 8 U.S.C. § 1201(g) and place it in "administrative processing."  *See* 22 C.F.R. § 42.63(c); 9 FAM § 302.1-8(C); *id.* § 504.11-3(A)(6)(a) ("If, after interviewing the applicant, you decide that an AO is necessary, first refuse the applicant under [8 U.S.C. § 1201(g)]."); *see also Sharifishourabi v. Blinken*, No. 23-cv-3382, 2024 WL 3566226, at *1 (D.D.C. July 29, 2024) (stating that, under a previous version of the

FAM, refusals issued for the purposes of obtaining an AO were classified as "Quasi-Refusal Cases"); *Giliana v. Blinken*, 596 F. Supp. 3d 13, 18 (D.D.C. 2022) (stating that, when a visa application is placed into administrative processing, "the initial 'refusal' is not the end of the process").[3]  An applicant may overcome a refusal for administrative processing only after the officer determines such processing "has been completed," such as through receipt of any requested AO response or other needed information.  9 FAM § 504.11-4(A)(a); *see id.* § 306.2-2(A)(a)(2). Pursuant to current internal guidance, "*under no circumstances* should" the officer make "a decision on the question of [an applicant's visa] eligibility" before receiving the requested AO from the State Department.  *Id.* § 504.11-3(A)(6)(a) (emphasis added).

## II.    Factual Background and Procedural History

For purposes of this Motion, the Court takes all well-pleaded facts alleged in the Complaint as true.  Plaintiffs, spouses currently residing in China, seek to immigrate to the United States. ECF No. 1. ¶¶ 1–3.[4]  On October 7, 2020, Plaintiffs filed an application on behalf of Aramnahad for a labor certificate from the Department of Labor.  *Id.* ¶¶ 4, 57.  Following the issuance of that certificate, Plaintiffs filed a Form I-140 Immigrant Petition, which USCIS approved, allowing Plaintiffs to apply for an EB-3 visa.  ECF No. 1 ¶ 4.  USCIS transferred Plaintiffs' application to the NVC, which scheduled Plaintiffs for an interview with a consular officer.  *Id.*  On March 30, 2023, Plaintiffs interviewed with a consular officer at the United States embassy in Guangzhou, China.  ECF No. 1 ¶¶ 2, 58.  At the conclusion of the interview, the officer informed Plaintiffs that the officer had refused their application under 8 U.S.C. § 1201(g) and placed the application in

---

[3]     *See also* U.S. Dep't of State, *Administrative Processing Information*, https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/administrative-processing-information.html (last visited Mar. 31, 2025).
[4]     Plaintiffs have two children who are derivatives of Aramnahad's visa application but are not parties to this case.  *Id.* ¶¶ 3, 56.

administrative processing.  *Id.* ¶ 58; ECF No. 1-4.  The officer then asked Plaintiffs to submit additional documentation detailing their addresses, employment, travel, and social media handles from the last fifteen years.  ECF No. 1 ¶ 58.  According to Plaintiffs, they "timely provided" this documentation.  *Id.*

To date, Plaintiffs' visa application remains "refused."  *Id.* ¶ 59; ECF No. 1-4.  Through its Consular Electronic Application Center website, the Government has stated that Plaintiffs' "case will remain refused while undergoing [administrative] processing," but Plaintiffs "*will receive another adjudication once such processing is complete*."  ECF No. 1-4 (emphasis added). According to Plaintiffs, the Government's delay in completing adjudication of their visa application has left "them in a perpetual state of uncertainty," and caused them financial instability due to the disruption to Aramnahad's career progression.  ECF No. 1 ¶¶ 5, 63–65.

On June 24, 2024, Plaintiffs filed this Complaint seeking mandamus and declaratory and injunctive relief to compel the Government to adjudicate their visa application within twenty-one days.  *Id.* at 18–25.[5]  Plaintiffs assert three counts against Defendant: (1) Count I for violation of Section 706(2) of the APA for withholding adjudication; (2) Count II for violation of Sections 555(b) and 706(1) of the APA for unreasonably delayed adjudication; and (3) Count III for a petition of mandamus due to the Government's alleged breach of its duty to adjudicate Plaintiffs' application.  *Id.*  The Government moves to dismiss Counts II and III.  ECF No. 6.[6]  This Motion is ripe for review.  *See* ECF Nos. 6; 8; 9.

---

[5]    Citations throughout this opinion are to the page numbers in a filing's ECF header.

[6]    In its Motion, the Government does not address or reference Count I, Plaintiffs' claim under 5 U.S.C. § 706(2), although the Government seeks to dismiss the Complaint in its entirety. *See* ECF Nos. 6-1; 1 ¶¶ 67–73.  Because the Government does not challenge Count I specifically, and "absent briefing from the parties, the Court declines to rule on" Count I now.  *Robinson v. District of Columbia*, No. 23-cv-2961, 2024 WL 2271759, at *8 (D.D.C. May 20, 2024).

## ANALYSIS

The Government moves to dismiss Plaintiffs' Complaint on two grounds. First, the Government argues that Plaintiffs fail to state a claim and that the Court lacks subject matter jurisdiction[7] because Plaintiffs have failed to identify a clear non-discretionary duty (a required element under the APA and Mandamus Act) for the Government to further act on their visa application. ECF No. 6 at 6 n.2, 9–13. Second, the Government argues that Plaintiffs fail to state a claim because the doctrine of consular nonreviewability bars review of their claims. *Id.* at 13–16. To support its arguments, the Government relies primarily on *Karimova v. Abate*, No. 23-5178, 2024 WL 3517852 (D.C. Cir. July 24, 2024), a recent, unpublished per curiam opinion from the D.C. Circuit.

Plaintiffs contest both grounds as well as the binding and persuasive effect of *Karimova*. ECF No. 8. As discussed below, *Karimova* is not binding, Plaintiffs have alleged a clear non-discretionary duty for the Government to act, and consular nonreviewability does not bar review at this stage of proceedings.

---

[7]     Although the Government cites both Rules 12(b)(1) and 12(b)(6) as grounds for its Motion, the Government has not been particularly precise in parsing out the specific grounds of its challenge to the counts in the Complaint. *See* ECF Nos. 6 at 6 n.2, 9–13; 9 at 7–15. That said, Plaintiffs must allege a clear duty to act to establish subject matter jurisdiction for their mandamus claim (Count III). *See Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016); *Janay v. Blinken*, 743 F. Supp. 3d 96, 113 n.4 (D.D.C. 2024).

The requirement that Plaintiffs identify a non-discretionary duty for purposes of the APA, however, speaks only to whether Plaintiffs have stated a claim for relief. *See Sierra Club v. Jackson*, 648 F.3d 848, 854 (D.C. Cir. 2011) ("[A] complaint seeking review of agency action 'committed to agency discretion by law' has failed to state a claim under the APA, and therefore should be dismissed under Rule 12(b)(6), not under the jurisdictional provision of Rule 12(b)(1)." (quoting 5 U.S.C. § 701(a))). The Court will, therefore, review Plaintiffs' unreasonable delay claim (Count II) pursuant to Rule 12(b)(6).

### I.    Standard of Review

A motion under Federal Rule of Civil Procedure12(b)(1) presents a threshold challenge to the Court's subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  The plaintiff bears the burden of establishing subject matter jurisdiction.  *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015).  In reviewing a motion under Rule 12(b)(1), the Court will "assume the truth of all material factual allegations in the complaint and construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged."  *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (internal quotation marks and citations omitted).  The Court may consider "materials outside the pleadings where necessary to resolve disputed jurisdictional facts."  *Ctr. for Bio. Diversity v. Jackson*, 815 F. Supp. 2d 85, 90 (D.D.C. 2011) (citing *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992)).

Under Rule 12(b)(6), the Court must dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  The right to relief in a complaint must be more than "speculative" in nature and should "state a claim . . . that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).  Thus, a court should be able to draw a "reasonable inference that the defendant is liable for the misconduct alleged" based on the "factual content" in a complaint.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing a challenge under Rule 12(b)(6), the Court may consider "any documents either attached to or incorporated in the complaint" by reference as well as matters of judicial notice.  *Wright v. Eugene & Agnes E. Meyer Found.*, 68 F.4th 612, 619 (D.C. Cir. 2023) (citation omitted); *see Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007).  The Court "may properly look beyond the complaint only to items in the record of the case or to matters of general public record," including taking judicial notice of information posted on official government websites.  *Phillips v. Bureau of Prisons*, 591 F.2d 966, 969 (D.C. Cir. 1979); *see Arab v. Blinken*,

600 F. Supp. 3d 59, 63 n.1 (D.D.C. 2022) (citing *Cannon v. District of Columbia*, 717 F.3d 200, 205 n.2 (D.C. Cir. 2013)).

## II.  Clear Non-Discretionary Duty to Act

### A.  Parties' Arguments

The Government first argues that Plaintiffs have failed to state a claim or establish subject matter jurisdiction because Plaintiffs have not identified a clear non-discretionary duty to act on the Government's part.  ECF Nos. 6 at 6 n.2, 9–13; 9 at 7–15; *see* Fed. R. Civ. P. 12(b)(1), (6). Relying on *Karimova*, the Government argues that Plaintiffs received a final decision when the consular officer refused their application and placed it in administrative processing.  ECF Nos. 6 at 9–13; 9 at 7–15.  In response, Plaintiffs contend they have not received a final decision on their visa and, thus, the Government has a duty, based on various sections of the INA, its implementing regulations, and the APA, to take further action on their pending application.  ECF No. 8 at 20–25, 29-40.  The Government's arguments are unavailing.

### B.  Legal Standard

In asserting a claim of unreasonable agency delay under the APA, a plaintiff "must first allege that the agency 'failed to take a discrete agency action that it is required to take'" by law. *Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 340 (D.C. Cir. 2023) (quoting *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004)); *see also* 5 U.S.C. § 706(1) (granting courts the authority to "compel agency action unlawfully withheld or unreasonably delayed").  Likewise, to obtain a writ of mandamus, a petitioner must show, among other threshold requirements, that the Government possesses "a clear duty to act" under the circumstances.  *Fornaro v. James*, 416 F.3d 63, 69 (D.C. Cir. 2005) (citation omitted); *see also* 28 U.S.C. § 1361 (granting district courts original jurisdiction "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff").

"[T]he standards for obtaining relief" through the APA and Mandamus Act in this context are "essentially the same." *Viet. Veterans of Am. v. Shinseki*, 599 F.3d 654, 659 n.6 (D.C. Cir. 2010) (citation omitted). Thus, when plaintiffs seek to compel unreasonably delayed agency action pursuant to both statutes, "those claims," at least at the threshold level, "merge." *Al-Gharawy v. U.S. Dep't of Homeland Sec.*, 617 F. Supp. 3d. 1, 17 (D.D.C. 2022); *see also Karimova*, 2024 WL 3517852, at *1 (observing how these "two paths to compulsory relief share a common threshold"). Under this fused analysis, a plaintiff "must allege that an agency has a clear non-discretionary duty to take a specific action and that the agency failed to take that action." *Sharifishourabi*, 2024 WL 3566226, at *5 (quoting *Arabzada v. Donis*, 725 F. Supp. 3d 1, 11 (D.D.C. 2024)).

Under Section 555(b) of the APA, agencies are required "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time" to "proceed to conclude a matter presented to it." 5 U.S.C. § 555(b). Many courts have found that, under that provision, a duty exists to conclusively adjudicate visa applications subject to administrative processing. *See, e.g.*, *Shoaie v. Blinken*, No. 24-cv-01513, 2024 WL 4697732, at *8 (D.D.C. Nov. 6, 2024) (noting there is a "long line of decisions finding that a duty exists under Section 555(b)"); *Arab*, 600 F. Supp. 3d at 68 (relying on 5 U.S.C. § 555(b) as imposing a duty to act).

### C.   Discussion

#### 1.   *Karimova v. Abate*

The Government primarily relies on the D.C. Circuit's recent unpublished decision in *Karimova*, in which the court held that a consular officer's decision to place an application in administrative processing was a final decision and officers did not have a clear duty to further act on those applications under Section 555(b) of the APA. 2024 WL 3517852, at *2–6. Plaintiffs

counter that the decision is "unpersuasive, nonprecedential, and nonbinding."  ECF No. 8 at 36. As discussed below, *Karimova* is not dispositive of this case.

In *Karimova*, a panel of the D.C. Circuit reached two relevant conclusions.  First, the court held that a consular officer's decision to refuse a visa application under 8 U.S.C. § 1201(g) and place it administrative processing constituted a "final decision" on the application.  *Karimova*, 2024 WL 3517852 at *4, *6.  The court determined that, when a consular officer "refuses" a visa, even when "more information might show the applicant to be eligible," that application becomes "officially refused."  *Id.* at *1–2.  In so doing, it relied heavily on the FAM, which does not currently permit "informal" or temporary refusals.  *Id.* (citing 9 FAM §§ 504.1-3(i), 504.11-2(A)(b)).  The court described "administrative processing" as the status by which a consular officer may choose to place an "officially refused application" for those applicants who "could perhaps still receive a visa eventually if circumstances change."  *Id.* at *2.  If, for example, the officer obtains "new information," the officer "can determine *sua sponte* that the administrative processing is 'completed'" and subsequently "re-open and re-adjudicate" the case.  *Id.* at *2 (citations omitted).  Unless such re-opening and re-adjudication occurs, however, a "visa application remains officially refused."  *Id.*

Second, the *Karimova* court held that Section 555(b) of the APA, on its own, did not impose a clear non-discretionary duty for the Government to act on a visa application placed in administrative processing.  *Karimova*, 2024 WL 3517852, at *3–4.  The court noted that the statutory provision "simply expresses 'a congressional view that agencies should act within reasonable time frames.'"  *Id.* at *3 (quoting *Telecommunications Rsch. & Action Ctr. v. FCC*, 750 F.2d 70, 77 (D.C. Cir. 1984)).  Given that the provision was "non-specific" in its directive to all agencies, the court determined Section 555(b) did not restrict a consular officer's "broad discretion

when adjudicating visa applications." *Karimova*, 2024 WL 3517852, at *4.  Notably, much of the

panel's reasoning revolved around its conclusion that any "matter" at issue "ha[d] already been

concluded." *Id.* (brackets and internal quotation marks omitted) (quoting 5 U.S.C. § 555(b)).

Accordingly, because the court already decided that refusing a visa application under 8 U.S.C. §

1201(g) and placing it in administrative processing was a final decision, the plaintiff could not

solely rely on 5 U.S.C. § 555(b) to provide a duty for the Government to act on their application.

*Karimova*, 2024 WL 3517852, at *3–6.

### a. *Karimova* is Not Binding.

In support of its argument that *Karimova* binds this Court, the Government cites D.C.

Circuit Rule 32.1, "Citing Judicial Dispositions."  ECF Nos. 6 at 6 n.1; 9 at 7–8.  Under that Rule,

"[a]ll unpublished orders or judgments of this court, including explanatory memoranda (but not

including sealed dispositions), entered on or after January 1, 2002, may be cited as precedent."

D.C. Cir. Rule 32.1(b)(1)(B).   In claiming that *Karimova* is binding, the Government fails to

address the rest of the Rule, which further provides that "[c]ounsel should review the criteria

governing published and unpublished opinions in Circuit Rule 36, in connection with reliance upon

unpublished dispositions of this court." *Id.*  D.C. Circuit Rule 36 states that, "[w]hile unpublished

dispositions may be cited to the court in accordance with . . . Circuit Rule 32.1(b)(1), a panel's

decision to issue an unpublished disposition *means that the panel sees no precedential value in

that disposition*." D.C. Cir. Rule 36(e)(2) (emphasis added).

To date, the D.C. Circuit has not provided clear guidance on whether, under these two local

appellate rules, the Circuit's unpublished opinions have a binding effect on this Court.  *See Shoaie*,

2024 WL 4697732, at *5–6 (discussing combined application of Rules 32.1(b)(1)(B) and

36(e)(2)); *see also Process & Indus. Devs. Ltd. v. Fed. Republic of Nigeria*, 962 F.3d 576, 584

(D.C. Cir. 2020) (noting unpublished opinions do not bind future panels of the D.C. Circuit (citation omitted)).

Courts in this District have taken different approaches on what precedential effect, if any, to give *Karimova*. The majority of the courts that have confronted the question have held that *Karimova* is not binding. *See Hajizadeh v. Blinken*, No. 23-cv-1766, 2024 WL 3638336, at *3 n.3 (D.D.C. Aug. 2, 2024) (concluding *Karimova* is not binding); *Baygan v. Blinken*, No. 23-cv-2840, 2024 WL 3723714, at *5 n.1 (D.D.C. Aug. 8, 2024) (noting "as an unpublished decision, *Karimova* is not strictly binding"); *Haeri Mehneh v. Blinken*, No. 24-cv-1374, 2024 WL 5116521, at *5 (D.D.C. Dec. 16, 2024) ("This Court joins others in finding *Karimova* nonbinding."); *Akter v. Flook*, No. 24-cv-146, 2025 WL 661296, at *2 n.1 (D.D.C. Feb. 28, 2025) ("[T]hat decision is unpublished and therefore not binding."); *Mahmoodi v. Altman-Winans*, No. 24-cv-2010, 2025 WL 763754, at *6 & n.3 (D.D.C. Mar. 11, 2025) (observing that although "defendants insist that *Karimova* binds this district court," "the panel's decision to issue *Karimova* as unpublished reflects a determination that the decision has no precedential value in that disposition" (internal quotation marks and citations omitted)); *Motevali v. Rubio*, No. 24-cv-1029, 2025 WL 885116, at *6 n.4 (D.D.C. Mar. 21, 2025) ("Like many courts in this district, this Court is reluctant to ascribe significance to a decision the D.C. Circuit chose not to publish."); *see also Datta v. Rubio*, No. 24-cv-2937, 2025 WL 752643, at *6–7 (D.D.C. Mar. 10, 2025) (adopting *Karimova* solely for its persuasive value). *But see Ibrahim v. Spera*, No. 23-cv-3563, 2024 WL 4103702, at *3 & n.2 (D.D.C. Sept. 6, 2024) (holding *Karimova* binding, but finding the Circuit decision "particularly difficult" to square with the facts of the case); *Hemmat v. Blinken*, No. 23-cv-2085, 2024 WL 4210658, at *4 (D.D.C. Sept. 17, 2024) ("*Karimova* squarely rejected that argument, and this court

is bound by that holding."); *Amjad v. Schofer*, No. 24-cv-1773, 2024 WL 4416984, at \*1 (D.D.C. Oct. 4, 2024) (granting motion to dismiss relying on *Karimova*).

This Court agrees with the majority that *Karimova*, as an unpublished opinion, is not binding. Circuit Rule 32.1(b)(1)(B) simply states that such opinions entered on or after January 1, 2002, "*may* be cited as precedent," not that litigants *must* cite them as precedent or that the Court must treat them as such. D.C. Cir. Rule 32.1(b)(1)(B) (emphasis added); *see United States v. McIlwain*, 931 F.3d 1176, 1180 (D.C. Cir. 2019) (noting in the context of interpreting a procedural rule that the word "may" customarily connotes discretion).[8] Moreover, D.C. Circuit Rule 36 dictates, that while unpublished opinions "may be cited to the court," "a panel's decision to issue an unpublished disposition means that the panel sees no precedential value in that disposition." D.C. Cir. Rule 36(e)(2).

The two rules work in harmony to instruct litigants both that they may cite unpublished cases as proper legal authority and that the value of such cases is not precedential. *See Verizon v. F.C.C.*, 770 F.3d 961, 968 n.11 (D.C. Cir. 2014) (noting that "parties may cite unpublished opinions" as if such opinions were precedent but adopting an unpublished opinion "for its persuasive authority"). Such a process makes sense "because the panel issuing such a disposition must unanimously agree that it does not alter, modify, or significantly clarify a rule of law," meaning such "decisions are frequently announced in a way that makes them not suitable for governing future cases." *In re Grant*, 635 F.3d 1227, 1232 (D.C. Cir. 2011) (citations, brackets, and internal quotations omitted); *see Kellmer v. Raines*, 674 F.3d 848, 851 (D.C. Cir. 2012) (noting

---

[8] The advisory committee's note to the corresponding Federal Rule of Appellate Procedure supports this conclusion, noting the rule "is extremely limited" and "says nothing about what effect a court must give to one of its unpublished opinions," only that such opinions may be cited. *See* Fed. R. App. P. 32.1 advisory committee's note to 2006 adoption.

that "an unpublished order" has "only persuasive authority" (internal quotation marks and citations omitted)).  This is especially true when, as here, litigants cite unpublished decisions as if those decisions resolve contested questions of law.  *See Cabrera v. Black & Veatch Special Project Corp.*, No. 19-cv-3833, 2024 WL 1435146, at *4 (D.D.C. Mar. 28, 2024) (observing that it would be "unlikely that the D.C. Circuit was resolving an open legal question through its unpublished, nonprecedential opinion"); *Brown v. District of Columbia*, 638 F. Supp. 1479, 1490 n.11 (D.D.C. 1986) ("The issuance of unpublished opinions seems a rather unique method of informing the lower court, bar, and public of the law laid down by the Circuit Court.").  Because the panel in *Karimova* concluded that the opinion should have "no precedential value," this Court will not give it such now.  *Maryland v. United States Dep't of Educ.*, No. 17-cv-2139, 2020 WL 7773390, at *1 (D.D.C. Dec. 29, 2020).

### b.  *Karimova* is Inapposite.

Nor is *Karimova* persuasive in light of the facts Plaintiffs have alleged in this case.  *See Hajizadeh*, 2024 WL 3638336, at *3 n.3 (declining to follow the opinion's reasoning); *Haeri Mehneh*, 2024 WL 5116521, at *5–6 (stating "this Court does not follow the unpublished *Karimova* decision," and highlighting the opinion's "narrow scope").  First the opinion relies on the FAM despite not explaining how the FAM's interpretations are legally binding or consistent with the INA and its implementing regulations.  *See Hassan v. Dillard*, No. 24-cv-1351, 2024 WL 4979476, at *5–6 (D. Minn. Dec. 4, 2024); *Maadarani v. Mayorkas*, No. 24-cv-1325, 2024 WL 4674703, at *8 (E.D. Cal. Oct. 31, 2024); *Sheikhalizadehjahed v. Gaudiosi*, No. 24-cv-1136, 2024 WL 4505648, at *7 n.6 (E.D. Cal. Oct. 16, 2024).  Although the FAM outlines the State Department's internal guidance, the Department did not issue the manual pursuant to any notice-and-comment rulemaking or independent congressional authority.  *See Shirouyehnezhad v. Blinken*, No. 23-cv-2910, 2025 WL 82299, at *3 (D.D.C. Jan. 13, 2025); *see also Scales v. Immigr.*

14

*& Naturalization Serv.*, 232 F.3d 1159, 1166 (9th Cir. 2000).  Thus, although relevant to understanding internal procedures such as administrative processing, the FAM does not carry the force of law.  *See Shirouyehnezhad*, 2025 WL 82299, at *3 (finding the FAM not "legally binding" in a similar context); *Babamuradova v. Blinken*, 633 F. Supp. 3d 1, 16 (D.D.C. 2022).

Second, the court's conclusion in *Karimova* that refusing an application and placing it in administrative processing is a "final" decision does not square with the facts Plaintiffs have alleged in this case, which at this stage the Cout must accept as true.  The Court must focus "on what is actually happening" here; the Government "cannot elevate 'form over substance'" to avoid review. *Al-Gharawy*, 617 F. Supp. 3d at 16 (quoting *Vulupala v. Barr*, 438 F. Supp. 3d 93, 98 (D.D.C. 2020)).  Based on the facts alleged, the officer's decision to place Plaintiffs' application in administrative processing is not equivalent to rendering a final decision.  *See Ibrahim*, 2024 WL 4103702, at *3 n.2 ("[I]t is extremely difficult to square the Circuit's analysis [in *Karimova*], which is based largely on agency regulations, with the communications that visa applicants actually receive from various consulates.").  Importantly, Plaintiffs have alleged that the Government has maintained that Plaintiffs "*will receive another adjudication* once [administrative] processing is complete." ECF Nos. 1 ¶ 59; 1-4 (emphasis added).  If true, Plaintiffs *will* receive a determination on their visa eligibility and application once the Government concludes administrative processing. *Carter v. U.S. Dep't of Homeland Sec.*, No. 21-cv-422, 2021 WL 6062655, at *3 n.3 (D.D.C. Dec. 22, 2021) (noting "refusals followed by 'administrative processing' are not 'final decisions'"). Thus, only after this processing will Plaintiffs know whether they will obtain a visa.  *See* 9 FAM § 306.2-2(A)(a)(2).

Notably, according to the Complaint, the consular officer here requested Plaintiffs provide additional documentation after placing their application in administrative processing, which

Plaintiffs provided.  ECF No. 1 ¶ 58; *see Karbasian v. U.S. Dep't of State*, No. 24-cv-1484, 2025 WL 821597, at *7 (S.D. Ill. Mar. 14, 2025) (noting the same distinction).  By contrast, in *Karimova* there was no indication that the consular officer requested additional information.  *See* 2024 WL 3517852, at *2–4.  This a significant difference because a consular officer "shall . . . reconsider[]" a visa application refused pursuant to 8 U.S.C. § 1201(g) if the applicant "adduces further evidence tending to overcome the ground of ineligibility on which the refusal was based" within one year from the date of refusal.  22 C.F.R. § 42.81(e); *see also* 8 U.S.C. § 1361.  The FAM similarly states that consular officers "should re-open and re-adjudicate the case by overcoming the prior [8 U.S.C. § 1201(g)] refusal and determining whether the applicant is eligible for a visa" if "the applicant has presented additional evidence to attempt to overcome a prior refusal" in their case.  9 FAM § 306.2-2(A)(a)(1); *see also id.* § 504.11-4(A)(a).

Moreover, unlike the plaintiff in *Karimova* who relied on "only Section 555(b)," Plaintiffs in this case rely on specific statutory provisions and the INA's implementing regulations *in conjunction with* the APA to argue that the Government has a clear non-discretionary duty to take further action.  2024 WL 3517852, at *3; *see* ECF No. 1 ¶¶ 4, 8, 13, 16, 33, 42–43, 49, 76, 97.  This fact further distinguishes this case from *Karimova*.  *See Makttoof v. Rubio*, No. 24-cv-1344, 2025 WL 928706, at *4 (D.D.C. Mar. 27, 2025) (making the same distinction); *Mahmoodi*, 2025 WL 763754, at *4 (same); *Giza v. Blinken*, No. 23-cv-1641, 2024 WL 3967284, at *4 (D.D.C. Aug. 27, 2024) (same).

### 2.  Plaintiffs Have Alleged a Duty for the Government to Act.

Accordingly, setting *Karimova* aside, the Court cannot dismiss Plaintiffs' Complaint at this stage.  Plaintiffs rely on Section 555(b) of the APA in conjunction with the INA and its implementing regulations to allege that the Government has a clear non-discretionary duty to act on their visa application.  *See supra* Analysis § II(C)(1)(b).  Among other sources, Plaintiffs cite

22 C.F.R. § 42.81(a), which requires a consular officer, upon proper execution of a visa application, to issue, refuse, or discontinue granting the visa.  *See* 22 C.F.R. § 42.81(a); ECF No. 1 ¶¶ 8, 16, 33, 49.[9]  Plaintiffs also identify 22 C.F.R. § 42.81(e), which requires a consular officer to reconsider an application that had been previously refused if the applicant, within one year from the date of refusal, "adduces further evidence tending to overcome the ground of ineligibility on which the refusal was based."  *See* ECF No. 1 ¶ 42.  When read in conjunction with Section 555(b) of the APA, the Government possesses "a clear duty to adjudicate visa applications within a reasonable time."  *Rashidian v. Garland*, No. 23-cv-1187, 2024 WL 1076810, at *5 (D.D.C. Mar. 8, 2024); *see Qadeer v. Schofer*, No. 23-cv-2268, 2024 WL 3835321, at *4 (D.D.C. Aug. 15, 2024) (collecting cases and concluding that "issuing a final decision on a visa application is plainly a discrete agency action, and it is required by both the APA and federal regulations" (citations omitted)), *Haeri Mehneh*, 2024 WL 5116521, at *6; *Makttoof*, 2025 WL 928706, at *4 & n.6.

The duty to conclusively grant or refuse a visa application is "required by both the APA and the State Department's own regulations, which require that a consular officer must 'issue' or 'refuse' a completed visa application."  *Mashaghzadehfard v. Blinken*, No. 23-cv-3164, 2024 WL 4198689, at *3 (D.D.C. Sept. 16, 2024) (quoting 22 C.F.R. § 42.81(a)); *Nine Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the United States v. Kerry*, 168 F. Supp. 3d 268, 293 n.22 (D.D.C. 2016); *see Khazaei v. Blinken*, No. 23-cv-1419, 2023 WL 6065095, at *6 (D.D.C.

---

[9]    Plaintiffs do not cite 22 C.F.R. § 42.62, which regulates the applicant's interview with a consular officer that is conducted during the execution of the visa application.  That regulation provides that all applicants "executing an immigrant visa application must be interviewed by a consular officer who shall determine on the basis of the applicant's representations and the visa application and other relevant documentation . . . [t]he applicant's eligibility to receive a visa."  *Id.* § 42.62(b)(1).  This regulation therefore goes hand-in-hand with 22 C.F.R. § 42.81(a).  The Court will consider them in conjunction, as a consular officer cannot make a decision to grant or refuse an applicant's visa without also determining whether that applicant is eligible for that visa.

Sept. 18, 2023) (reaching the same conclusion in a nonimmigrant visa context).  Accordingly, the Government's failure to adjudicate a completed visa application within a reasonable time, as Section 555(b) mandates, is reviewable.  This is especially so here, where Plaintiffs have appeared for their interview and executed their application before a consular officer.  *See Mashaghzadehfard*, 2024 WL 4198689, at *3; *Khazaei*, 2023 WL 6065095, at *6 (observing that "[g]ranting or refusing a visa to an applicant who has been interviewed is clearly a discrete agency action" in the context of a nonimmigrant visa case).

Acknowledging that it may possess a duty under 22 C.F.R. § 42.81(a), the Government attempts to frame Plaintiffs' claims as seeking "to re-adjudicate" their visa application.  ECF No. 9 at 12–14.  At the motion to dismiss stage, however, this argument conflicts with Court's duty to assume the truth of all material factual allegations and accept as true all well-pleaded facts and inferences.  *See Barazandeh v. U.S. Dep't of State*, No. 23-cv-1581, 2024 WL 341166, at *6 n.5 (D.D.C. Jan. 30, 2024).  In the Complaint, Plaintiffs allege their "application is still pending," and the Government's clear non-discretionary duty "is not a duty to reconsider a refused visa application, but" instead "a consular officer's duty to review and adjudicate immigrant visa applications as set out" in the INA's implementing regulations.  *Id.*; *see, e.g.,* ECF No. 1 ¶ 49 ("[T]he Consulate has failed to render a final decision despite the passage of over one year and two months since the Plaintiffs attended their interview.  Plaintiffs seek only to compel the Defendants to make a final decision on their pending immigrant visa application. . . .").

Although the Government may "choose to characterize" a consular officer's decision to place an application in administrative processing as a final refusal pursuant to 8 U.S.C. § 1201(g), "that magic word is not a get-out-of-review-free card."  *Al-Gharawy*, 617 F. Supp. 3d at 16. Indeed, the Government informed this Court at a November 21, 2024 status conference that the

consular officer here purported to refuse Plaintiffs' visa application and place it in administrative processing to secure a security AO response.  *See* Minute Entry (Nov. 21, 2024); *see also* FTR Gold Recording of Nov. 21, 2024 Status Conf.  In line with internal guidance, the officer, therefore, *could not* have made "a decision on the question of" Plaintiffs' visa eligibility.  9 FAM § 504.11-3(A)(6)(a); *see* 22 C.F.R. § 42.63(c) (stating a consular officer may request more information from an applicant when current information is "inadequate to *determine* the [applicant's] eligibility to receive an immigrant visa" (emphasis added)); *see Nine Iraqi Allies*, 168 F. Supp. 3d at 292 (framing administrative processing as a "failure to decide").[10]  Further, according to the Complaint, the Government has informed Plaintiffs that there will be next steps on their visa application once administrative processing is complete.  *See* ECF Nos. 1 ¶ 59; 1-4.  Thus, because a consular officer has not determined whether to grant or refuse Plaintiffs' visa application or settled the question of Plaintiffs' visa eligibility, the Government has not completed adjudication for purposes of the APA and State Department regulations as alleged in the Complaint.  *See* 5 U.S.C. §§ 555(b), 706(1); 22 C.F.R. §§ 42.62(b)(1), 42.81(a).

Moreover, even if the Court determined that the Government had conclusively refused Plaintiffs' visa application and Plaintiffs were now seeking some sort of reconsideration, the Government's duties under the INA's implementing regulations would not cease.  The Government still possesses a clear non-discretionary duty to reconsider within a reasonable time visa applications refused under 8 U.S.C. § 1201(g) when an applicant "adduces further evidence tending to overcome the ground of ineligibility on which the refusal was based" within one year of refusal.  22 C.F.R. § 42.81(e); *see Makttoof*, 2025 WL 928706, at *4 & n.6; *Haeri Mehneh*, 2024 WL 5116521, at *6.  Here, Plaintiffs allege that they "timely provided" new documentation

---

[10]    This fact further distinguishes *Karimova* from this case.

the Government requested following their refusal and placement in administrative processing. ECF No. 1 ¶ 58.  Accordingly, the Government would still possess a duty under the APA and 22 C.F.R. § 42.81(e) to reconsider Plaintiffs' visa application within a reasonable time.

In sum, Plaintiffs have alleged that the Government has a clear non-discretionary duty to adjudicate Plaintiffs' visa eligibility.  22 C.F.R. §§ 42.62(b)(1); 42.81(a), (e).  Because the Government does not assert that Plaintiffs' unreasonable delay claims fail on the merits, the Court's analysis ends here.  ECF No. 6 at 6 n.2.

### III.    Consular Nonreviewability

#### A.    Parties' Arguments

The Government's second argument largely depends on this Court adopting the premise in *Karimova* that, despite the facts alleged about the status of Plaintiffs' application, they have received a final decision.  ECF Nos. 6 at 13–16; 9 at 15–18.  The Government, thus, seeks to dismiss Plaintiffs' Complaint for failure to state a claim based on the doctrine of consular nonreviewability.  *Id.*; *see* Fed. R. Civ. P. 12(b)(6); *Dep't of State v. Munoz*, 602 U.S. 899, 908 (2024) (noting "the doctrine of consular nonreviewability is not jurisdictional").  The Government acknowledges "there was some debate before the D.C. Circuit's decision in *Karimova* as to whether the doctrine applied in cases seeking to compel action on visa applications in post-refusal administrative processes," but "*Karimova* necessitates an end to that debate."  ECF No. 6 at 15. Plaintiffs argue that the doctrine does not apply here because they have not received a final decision on their application.  ECF No. 8 at 25–29.  Plaintiffs are correct.

#### B.    Discussion

Under the doctrine of consular nonreviewability, the Court generally "cannot review" the substance of a "consular officer's denial of a visa."  *Munoz*, 602 U.S. at 908; *see Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1024 (D.C. Cir. 2021).  Before *Karimova*, most courts in this

District applied this doctrine only to an officer's "final decision" on a visa application, and not to visa applications placed into administrative processing.  *See, e.g.*, *Al-Gharawy*, 617 F. Supp. 3d. at 16 (determining such refusals are "merely provisional, with a final decision yet to come"); *Carter*, 2021 WL 6062655, at *3 n.3; *Vulupala*, 438 F. Supp. 3d at 98, *Nine Iraqi Allies*, 168 F. Supp. 3d at 291.

Assuming the facts alleged in the Complaint as true, the Government has not yet rendered a final decision on Plaintiffs' visa application.  *See supra* Analysis § II(C)(2).  Accordingly, at this stage, Plaintiffs have stated a claim because "the consular nonreviewability doctrine applies only to final decisions and thus does not bar judicial review of a consular officer's delay when a visa application has been provisionally refused pending a final decision."  *Al-Gharawy*, 617 F. Supp. 3d at 11 (collecting cases).

## CONCLUSION

For the foregoing reasons, the Government's Motion to Dismiss (ECF No. 6) is **DENIED**.


Date: March 31, 2025

_____
MOXILA A. UPADHYAYA
UNITED STATES MAGISTRATE JUDGE